OPINION
{¶ 1} Defendant-appellant, Melanie Mitchell, appeals her conviction in the Clermont County Court of Common Pleas of six counts of forgery in violation of R.C. 2913.31(A)(1). We affirm.
 {¶ 2} Appellant was employed at the Fashion Bug located in the Eastgate Mall in Clermont County. As part of their job functions, Fashion Bug employees solicited applications from customers for a Fashion Bug credit card, which was issued by Spirit of *Page 2 
America Bank. If customers agreed to apply for a card, employees would submit their information electronically at the checkout counter to Spirit of America. After receiving the information, Spirit of America would issue a credit card if the customer is approved or send a rejection letter if credit is declined. Employees received 50 cents for each application submitted. The employees identified themselves by entering their employee number with the credit information. Fashion Bug set daily quotas for credit card applications based upon the number of credit purchases each day and the store manager closely monitored the number of applications.
 {¶ 3} On October 31, 2005, a security manager at Spirit of America received a complaint from two customers that had received rejection letters without having first applied for a credit card. The security manager found that the applications were submitted by employee 0816827, appellant's employee number. The security manager located other applications submitted with that same employee number and contacted the applicants on the forms, which identified 11 individuals who received rejection letters, but never applied for a card.
 {¶ 4} Appellant was questioned twice by the police and appellant provided written statements. According to appellant, her quota of credit card applications could only be met by submitting applications for people without permission. In her statements, appellant stated that she was taught several "unethical" practices at Fashion Bug that were "not exactly right" and identified possible sources of the applications. According to appellant credit-application information was gathered by: appellant's manager supplying information for appellant to input; employees conducting "surveys" in the mall parking lot; unsuccessful job applications; resubmitting credit card applications which had been denied; or randomly choosing names from the phone book. Appellant would input the information gleaned from these sources and fabricate any remaining information that was unknown such as social security numbers *Page 3 
and/or birth dates. Appellant also claimed that other employees could have input the information using her employee identification number.
 {¶ 5} Appellant was charged with eleven counts of identity fraud in violation of R.C. 2913.49(B)(1) and eleven counts of forgery in violation of R.C. 2913.31(A)(1). Appellant waived her right to a jury and the case proceeded to a bench trial. At trial, the state presented evidence for only six counts of forgery and identity fraud.[1]
Following the state's presentation of evidence, appellant moved for acquittal, which was denied by the trial court. In a written decision, the trial court found appellant not guilty of the six counts of identity fraud but guilty of the six counts of forgery. Appellant filed a motion for new trial, which was denied by the trial court. Appellant was sentenced to five years of community control. Appellant timely appeals, raising four assignments of error. In the interest of clarity, we will address appellant's assignments of error out of order.
 {¶ 6} Assignment of Error No. 2:
 {¶ 7} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT-APPELLANT'S MOTIONS FOR JUDGMENT OF ACQUITTAL UNDER CRIMINAL RULE 29."
 {¶ 8} Appellant's second assignment of error concerns the application of Ohio's forgery statute to electronic data or information. Appellant argues that it was error for the trial court to overrule her Crim. R. 29 motion because her conduct did not constitute forgery under R.C. 2913.31(A)(1).
 {¶ 9} A trial court's decision to deny a Crim. R. 29(A) motion for acquittal based upon the sufficiency of the evidence will be upheld if, construing the evidence in a light most favorable to the state, any rational fact-finder could have found the essential elements of the *Page 4 
crime proven beyond a reasonable doubt. State v. Dennis,79 Ohio St.3d 421, 430, 1997-Ohio-372; State v. Jenks ( 1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact. Dennis, 79 Ohio St.3d at 430.
 {¶ 10} The case at bar demonstrates the difficulty that computer technology poses to courts and its application to traditional legal frameworks. See Winter, Old Crimes in New Bottles: Sanctioning Cybercrime (2000), 9 G.M.L.R. 237, 237. Specifically, this case concerns whether the traditional crime of forgery can be accomplished strictly through electronic means.
 {¶ 11} Forgery, pursuant to R.C. 2913.31(A)(1), prohibits that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing of another without the other person's authority."
 Writing {¶ 12} The first issue raised by appellant, is that no "writing" existed in this case as defined by R.C. 2913.01(F). Appellant argues "merely inputting information" into a computer and submitting the information does not create a "writing." Under appellant's rationale, to constitute a "writing," the information must be compiled and fixed in a paper form. We disagree.
 {¶ 13} "Writing" is defined as "any computer software, document, letter, memorandum, note, paper, plate, data, film, or other thing having in or upon it any written, typewritten, or printed matter, and any token, stamp, seal, credit card, badge, trademark, label, or other symbol of value, right, privilege, license, or identification." R.C. 2913.01(F).
 {¶ 14} Clearly, "writing" as defined in the revised code applies to electronic data and information as the definition contemplates "computer software" or "data * * * having in or *Page 5 
upon it any * * * typewritten matter."
 {¶ 15} The electronic data and information submitted by appellant constitutes a recorded "writing," because it was submitted and can be retrieved in a perceivable form.[2] Namely, the information is the functional electronic equivalent of a paper application which contains all relevant credit information. Although not in paper form, computer technology allows full credit applications to be processed electronically. Accordingly, the data record submitted by appellant constitutes a "writing" under the statutory definition.
 {¶ 16} Moreover, appellant argues the evidence introduced by the state at trial "proved only that appellant submitted inaccurate information, no more" and that no actual "application" was forged. Appellant's argument is unpersuasive.
 {¶ 17} "Forge" is defined as, "to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." R.C. 2913.01(G).
 {¶ 18} When inputting and submitting the information, appellant included all of the necessary details for a full credit application. Albeit some of the submitted information was fabricated by appellant such as social security numbers or birth dates, but the definition for "forge" includes fabricating or creating a writing or the contents of a writing. "That a forged writing may also contain false information is only incidental, and not necessary to commit the offense." State v.Sufronko (1995), 105 Ohio St.3d 504, 509. By including all the necessary information, appellant clearly intended to create complete spurious electronic applications, *Page 6 
which she sought to receive credit for toward the required quota at the store.
 {¶ 19} The evidence at trial did not simply prove that appellant was merely "submitting inaccurate information." Rather, the evidence showed that appellant submitted accurate names, addresses and phone numbers of specific individuals. Appellant created the remaining information to supplement any unknown information. The victims were not simply fictitious persons; they were specific individuals who did not authorize nor request the services.
 "Of Another" {¶ 20} Appellant's primary argument in this assignment of error is that the information submitted to Spirit of America is not a "writing of another." Rather, appellant claims that the applications are her writings. Appellant argues that since she entered the information into the computer and included her employee identification number, these were not "writings of another."
 {¶ 21} In this case, the trial court found that "in submitting [the applications] to Spirit of America, Defendant not only warranted the authenticity of the information itself, but also improperly warranted the application as a whole to constitute a valid product of third party consent. Defendant's role in the Fashion Bug application process was that of a mere conduit between applicants and Spirit of America. As a result, the Court finds that the writings at issue were not hers, but were instead writings purporting to authenticate the consent of third-parties in applying for credit."
 {¶ 22} We agree with the trial court's finding. By electronically submitting the information, appellant was representing to the credit card company that these individuals were interested in obtaining a credit card and, accordingly, were submitting their information for credit approval. Appellant entered the information into the computer, but the customer was applying and it is the customer's application. These applications, and the information *Page 7 
included therein, are not appellant's writings.
 {¶ 23} These electronic applications are analogous to any paper application. When applying for a credit card, insurance, any other application, or even executing a contract, information is often transcribed onto the application or document on behalf of the applicant by a third party; be it a sales clerk, insurance agent, loan officer, or the applicant's attorney. In such a case, these documents are not the writings of the clerk, insurance agent, loan officer, etc.; they belong to the applicant. Similarly, the applications in this case are not the writings of appellant. Appellant's employee identification number may have been included with the submitted application, but that is to reference which employee entered the information and should be credited for the referral.
 Other Crimes {¶ 24} Appellant directs the court to other violations of the Revised Code. Appellant argues that her conduct may constitute tampering with records in violation of R.C. 2913.42(A)(1) or falsification in violation of R.C. 2921.13(A)(8), but it does not amount to forgery.
 {¶ 25} In reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would support a conviction. State v. Wilson, Warren App. No. CA2006-01-007,2007-Ohio-2298, ¶ 33. In reviewing a record for sufficiency, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 26} After a review of the record and our analysis above, sufficient evidence was presented to find the essential elements of forgery. Appellant's second assignment of error *Page 8 
is overruled.
 {¶ 27} Assignment of Error No. 1:
 {¶ 28} "THE TRIAL COURT ERRED BY BASING DEFENDANT-APPELLANT'S CONVICTIONS OF FORGERY SOLEY UPON INFERENCES BASED UPON INFERENCES."
 {¶ 29} In her first assignment of error, appellant argues the trial court's findings resulted solely from inferences based upon inferences. Appellant argues that such a finding violates the Ohio Supreme Court's decision in State v. Palmer, 80 Ohio St.3d 543, 1997-Ohio-312, and this court's decision in State v. Cooper, 147 Ohio App.3d 116, 2002-Ohio-617. Specifically, appellant claims that no evidence was presented at trial that definitively identified her as the person who input the information or that she had the requisite mental state.
 {¶ 30} In Palmer, the Ohio Supreme Court noted that "[a]n inference based solely and entirely upon another inference, unsupported by any additional fact or another inference from other facts, is an inference on an inference and may not be indulged in by a jury."80 Ohio St.3d at 561, citing Hurt v. Charles J. Rogers Transp. Co. (1955), Ohio St. 329, paragraphs one and two of the syllabus. But "An inference which is based in part upon another inference and in part upon facts is a parallel inference and, if reasonable, may be indulged in by a jury." Id.
 {¶ 31} Similarly, in Cooper, this court held that "[a] trier of fact may not draw an inference based entirely upon another inference, unsupported by any additional fact or another inference from other facts. 147 Ohio App.3d at 126, citing State v. Cowans (1999),87 Ohio St.3d 68. Yet a second inference may be drawn upon a previous inference if the second inference is based at least in part on additional facts or inferences drawn from other facts. Id. *Page 9 
 {¶ 32} Moreover, the Supreme Court of Ohio has held that intent in criminal cases is not directly provable by objective evidence, as it lies within the privacy of a person's intimate thoughts. State v.Garner, 74 Ohio St.3d 49, 60, 1995-Ohio-168. Generally, intent "must be gathered from the surrounding facts and circumstances." State v.Lott (1990), 51 Ohio St.3d 160, 168.
 {¶ 33} Appellant's employee identification number was included on the applications at issue. In her statement to police, appellant acknowledged the questionable practices at Fashion Bug and that she submitted credit information from those questionable sources. Further, appellant's trial counsel conceded that appellant "generated without the permission of a third party, generated a credit application for that third party."
 {¶ 34} Further, appellant's mental state could have been inferred from the direct evidence of appellant's written statement to the police that, "I knew that some of the things that I was taught to do, and were doing, were not exactly right, but I needed my job."
 {¶ 35} Accordingly, the trial court's findings of fact were properly supported by the record. Appellant's first assignment of error is overruled.
 {¶ 36} Assignment of Error No. 3:
 {¶ 37} "THE TRIAL COURT'S DECISION AND JUDGMENT FINDING APPELLANT GUILTY OF SIX COUNTS OF FORGERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 38} Assignment of Error No. 4:
 {¶ 39} "THE TRIAL COURT ERRED BY FINDING APPELLANT GUILTY OF FORGERY."
 {¶ 40} In her third and fourth assignments of error, appellant essentially presents the same argument; that her convictions were against the manifest weight of the evidence. Appellant argues that there were "internal inconsistencies or conflicts in the possible *Page 10 
meanings of appellant's statements and other exhibits" that the elements of forgery were not proven beyond a reasonable doubt.
 {¶ 41} When considering a manifest weight of the evidence challenge, an appellate court reviews the entire record, weighing the evidence and all reasonable inferences that can be drawn from it, and considers the credibility of witnesses, to determine whether in resolving conflicts in the evidence, "the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983),20 Ohio App.3d 172.
 {¶ 42} After a review of the record, weighing all evidence and all reasonable inferences, we cannot say that the trier of fact clearly lost its way and that the convictions must be reversed.
 {¶ 43} Appellant's third and fourth assignments of error are overruled.
 {¶ 44} Judgment affirmed.
WALSH and POWELL, JJ., concur.
[1] The state presented the testimony of six victims that received rejection letters, but never applied for the credit card. The trial court considered the decision by the state to not proceed on the remaining five counts of forgery and identity fraud as a nolle posequi pursuant to Crim. R. 48(A).
[2] See other areas of law treating computer files, data, and electronic documents given the same treatment as tangible, paper writings such as the Ohio Uniform Commercial Code, R.C. 1306.01(M) ("Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form), and the United States Copyright Act, Section 101, Title 17, U.S. Code ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device"). *Page 1